IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM FAULKNER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF CHICAGO, a municipal ) <br> Corporation; Chicago Police Detective ) <br> ELIZABETH RYAN, Star. No. 21825; ) <br> Chicago Police Detective HEATHER SCHERR, ) <br> Star No. 21827; and Chicago Police Officer ) <br> WILMER HERNANDEZ, Star No. 11216, ) <br> ) <br> Defendants. ) | Case No. 1:20-CV-4206 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION & ORDER

Plaintiff William Faulkner brings the instant three-count third amended complaint against defendants the City of Chicago ("the City"), Detective Elizabeth Ryan ("Detective Ryan"), Detective Heather Scherr ("Detective Scherr"), and Officer Wilmer Hernandez ("Officer Hernandez") (collectively, "defendants"). Count I alleges deprivation of plaintiff's constitutional rights under the Fourth Amendment due to his allegedly wrongful arrest pursuant to 42 U.S.C. § 1983; Count II alleges deprivation of his constitutional rights under the Fourth Amendment due to his allegedly unlawful pretrial detention pursuant to 42 U.S.C. § 1983; and Count III seeks indemnification against the City under Illinois law. Defendants move for summary judgment in their favor on all counts (Doc. 80). For the reasons discussed below, the court grants defendants' motion.

## BACKGROUND

Plaintiff was arrested and charged with attempted first-degree murder, among other

1

things, in connection with the shooting of Marlo Phillips ("Phillips"). Phillips, who was seriously injured, identified plaintiff in a photo array as the individual who shot him, and his identification was a key piece of evidence against plaintiff. On July 24, 2019, the government dismissed the charges against plaintiff as nolle prosequi. Plaintiff is now suing defendants for violating his Fourth Amendment rights. According to plaintiff, Detective Ryan, Detective Scherr, and Officer Hernandez lacked probable cause to arrest and detain him.[1]

The shooting occurred on November 3, 2018, between 2:40–2:50 p.m., while Phillips walked home from the grocery store. Phillips remembers a man running toward him with a firearm, and their interaction was captured on a Ring doorbell camera at 12011 South Stewart Avenue in Chicago, Illinois. The video shows Phillips pleading with the individual before the man shot him multiple times at close range and fled. Detectives Ryan and Scherr investigated the shooting and learned from neighbors that the shooter was a heavy-set black male.

The detectives moved their investigation to the hospital where Phillips was being treated. They interviewed Phillips' mother, Ungelique Franklin ("Franklin"), who was not present for the shooting but told the detectives that she was receiving information about the identity of her son's shooter. The parties dispute how Franklin received this information: whether from individuals in the neighborhood, her telephone, or social media. Franklin lived in Wisconsin at the time and was not familiar with the south side of Chicago. The detectives also interviewed Phillips, who told them that he did not know the shooter or the shooter's motive, but "could never forget his face."

Later that day, Franklin sent Detective Ryan a text message containing a Facebook photograph of a potential suspect in her son's shooting. Detective Ryan asked Franklin how she

---

[1] The officers are all employed by the City of Chicago, which is a municipal corporation of the State of Illinois.

obtained the photograph, and the parties dispute how she responded. According to defendants, Franklin refused to provide additional details about how she obtained the photograph. Conversely, in her deposition, Franklin testified that she told Detective Ryan that her second cousin, Eric Washington (also known as "Monty"), gave her information about the shooter, leading her to conduct her own social media investigation. Franklin stated that Monty overheard a conversation at his trade school in which his classmates were "bragging about how their friend had just shot up a boy on 120th and Stewart," which he and Franklin understood to refer to Phillips. In his deposition, Eric Washington denied overhearing this conversation and discussing Phillips's shooting with Franklin, although he visited Phillips at the hospital.

In addition to disputing what Franklin told Detective Ryan about the source of the photograph, the parties dispute whether Franklin sent additional photographs to Detective Ryan, and whether these photographs contained people other than plaintiff. Neither Franklin, Ryan, nor Phillips knew the identity of the individual(s) in the photograph(s) at that time.[2]

Detective Ryan printed the initial photograph and distributed copies among the tactical team. On November 9, 2018, Officer Hernandez saw the photograph on his sergeant's desk and recognized the depicted individual as plaintiff. According to his deposition testimony, he informed Detective Ryan of plaintiff's identity, which he knew from seeing plaintiff around the neighborhood. He also gave Ryan an "Individual Record" ("IR") number that was assigned to plaintiff from a prior arrest, although Hernandez testified that he himself had not arrested or otherwise interacted with plaintiff previously. Officer Hernandez testified that plaintiff had gang affiliations, although plaintiff's arrest report shows no gang affiliations and plaintiff testified that

---

[2] Plaintiff does not dispute that he is the individual depicted in the initial photograph. Franklin identified another individual named "Cody" in a later photograph, whom she indicated in her deposition was one of the shooter's "close buddies."

3

he was never in a gang. Plaintiff then became the primary suspect of this investigation.

On November 10, 2018, Detective Ryan created a six-person photo array for Phillips with a photograph from plaintiff's driver's license. Detective Steven Kelnosky independently administered the photo array, with no knowledge of the suspect's identity or location in the array. Phillips identified plaintiff as the person who shot him on November 3, 2018, noting that he will "never forget that face." After Phillips identified plaintiff, "an investigative alert was issued with probable cause for his arrest." Detective Ryan testified that Phillips's identification of plaintiff in the photo array was the basis for probable cause.

The parties dispute whether, prior to viewing the photo array, anyone showed Phillips a photograph of plaintiff or told him who the shooter was. Detective Kelnosky indicated in his deposition that he did not coach, pressure, threaten, coerce, or otherwise suggest to Phillips who he should identify in the array. Further, Phillips testified in his deposition that no one, including Franklin, sent him or showed him a picture of his shooter, or told him who the shooter was. Detective Ryan testified that she did not know if Phillips saw any pictures of plaintiff prior to viewing the photo array or if Franklin said anything to Phillips about plaintiff's identity. Detective Scherr denied that Franklin did so. On the other hand, Franklin testified in her deposition that she showed Phillips a photograph of plaintiff before texting it to Detective Ryan, telling Phillips that plaintiff was the shooter.[3] Her text messages show that she told Detective Ryan that, "He said this is the boy that shot him. The last picture I sent you." Moreover, according to Franklin's testimony, Phillips came out of the photo array and indicated to Franklin

---

[3] Franklin stated that "I think I showed Marlo [(Phillips)] the photograph before I showed the detective. Before I showed it to the detectives. . . . He was in the hospital and I was mad, screaming and yelling at him telling him don't deny it. He knows that's who shot him and he told me the truth." When asked if Franklin asked Phillips if the individual in the photograph was the person who shot him, Franklin responded, "No. I didn't ask him. I told him."

4

that he identified plaintiff because of her actions.[4] Defendants interpret Franklin's testimony to say that Phillips identified plaintiff based on his face.

Regardless of why Phillips identified plaintiff as the shooter, Officer Hernandez began searching for plaintiff in response to the investigative alert. He discovered that plaintiff was a student at Eastern Illinois University ("EIU") and a resident of a dormitory on campus. The parties dispute the driving distance between EIU and the scene of the shooting, with defendants asserting that EIU is two hours and 40 minutes from the scene of the shooting and plaintiff asserting that the distance is closer to three hours.

On December 5, 2018, Officer Hernandez and two other officers arrested plaintiff in his dormitory at EIU and transported him to Chicago, where Detectives Ryan and Scherr interviewed him. Plaintiff denied involvement in the shooting and claimed that he was at his dormitory the entire weekend. He ate in the dining hall on Saturday night. Additional investigation resulted in still pictures from surveillance footage from EIU and a log of activity from plaintiff's student identification card. Plaintiff's card was swiped at an EIU dining hall on November 3, 2018, at 5:58 p.m., which is, at most, three hours and 18 minutes after the Phillips shooting.[5]

On December 6, 2018, Assistant State's Attorney Christopher Moss ("ASA Moss"), from the Cook County felony review unit, spoke with the detectives about their investigation. He independently reviewed the police reports, photo array, Ring doorbell video, and plaintiff's electronically recorded interview, in addition to re-interviewing Phillips at the hospital. Phillips reaffirmed that plaintiff was the individual who shot him. ASA Moss approved felony charges

---

[4] Franklin testified that Phillips "came out of the room in a couple of seconds and he was like I identified them, momma, because I had showed him the picture."

[5] Plaintiff, who argues that his arrest report shows that the shooting occurred at 2:50 p.m., indicates that he swiped into the dining hall only three hours and eight minutes after the shooting.

against plaintiff. The parties dispute whether ASA Moss, in approving felony charges against plaintiff, was fully apprised of the nature of Franklin's "civilian investigation" using social media. According to defendants, ASA Moss "had no reason to believe that [Franklin's] investigation was an issue." Plaintiff counters that ASA Moss testified that "he believed the mother got the name of an individual, went on social media, got a photo of the individual, and gave it to detectives," which is inconsistent with the facts as Franklin presents them.

After ASA Moss approved charges against plaintiff, Phillips signed a criminal complaint charging him, and on December 7, 2018, a Cook County judge found probable cause to detain him. Later in December, a grand jury returned a twelve-count indictment against plaintiff after hearing testimony from Detective Ryan, who indicated that there was video surveillance footage of the incident and that her investigation revealed that plaintiff shot Phillips.

The investigation continued after plaintiff's indictment. In January 2019, plaintiff's defense attorneys received video surveillance footage from EIU, showing plaintiff swiping his card at the dining hall at 2:06 p.m. on November 2, 2018, the day before the shooting.[6] It also showed plaintiff walking through Lawson Hall at 5:56 p.m. and entering Andrews Hall at 5:58 p.m. on November 3, 2018 (the day of the shooting). On June 11, 2019, plaintiff's defense attorneys produced statements from three alibi witnesses, including two witnesses who said that they were with plaintiff throughout the day on November 3, playing video games in plaintiff's room. These witnesses indicate that the only time they were not with plaintiff was when they left to go to Walmart.

On July 24, 2019, the state dropped its charges against plaintiff after reviewing his

---

[6] Defendants argue that plaintiff lacks foundation to introduce the swipe card information because, as Detective Ryan indicated in her deposition, "anybody can use his card." There is no evidence that anyone except plaintiff used plaintiff's card that weekend.

criminal file, and he was released after spending over seven months in custody. The state indicated that it did not believe that it could meet its burden of proof at trial. Franklin told the assistant state's attorney that Phillips was in federal prison in North Carolina, and he was unwilling to testify at plaintiff's trial—although in his deposition, Phillips testified that no one from the state's attorney's office reached out to him, and he would have cooperated if someone had asked. Moreover, the state indicated that "[t]he doorbell video does not appear to show the [plaintiff]" because "[t]he stature of the [plaintiff] does not match the man on the video."[7] The state was concerned with the "tight timeline," and that Phillips "saw Defendant's Facebook photo before photo array."

Plaintiff filed the instant action on July 16, 2020, for violations of his constitutional rights under the Fourth Amendment. He argues that his arrest and pretrial detention were not supported by probable cause. Defendants filed the instant motion for summary judgment, arguing that no reasonable jury could find in favor of plaintiff because plaintiff raises no genuine dispute of material fact.

## **LEGAL STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden to show that there is no genuine dispute of material fact preventing the entry of judgment in its favor as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Supreme Court has determined that a fact is "material" when it may affect the outcome of the suit under the governing law and the dispute is "genuine" when

---

[7] Detective Ryan testified that she could not tell if plaintiff looked like the individual in the video because the video was distorted. The parties dispute Detective Scherr's testimony regarding whether plaintiff looked like the individual in the video. Officer Hernandez could not recognize the individual in the video because it was "grainy."

the evidence is such that a reasonable jury could return a verdict for the nonmovant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court's function is limited to determining whether the parties have provided sufficient evidence to support a factual dispute that warrants submission to a jury for resolution at trial. See id. at 249. The court must view all facts in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But the nonmovant must do more than raise "some metaphysical doubt as to the material facts." Id. at 586. Rather, the nonmovant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## DISCUSSION

Defendants argue that they are entitled to summary judgment on all counts.[8] They argue that Detectives Ryan and Scherr and Officer Hernandez are entitled to summary judgment on plaintiff's claims of false arrest (Count I) and unlawful pretrial detention (Count II) for three reasons: (1) the undisputed material facts demonstrate that they had probable cause to arrest and detain plaintiff; (2) their alleged misconduct was not the proximate cause of plaintiff's injuries; and (3) they are entitled to qualified immunity. Without claims against the individual officers, a jury cannot find the City to be liable on plaintiff's state-law indemnification claim (Count III), so defendants argue that they are also entitled to summary judgment on that claim. The court agrees that defendants are entitled to summary judgment on all counts.

---

[8] The court acknowledges defendants' argument that plaintiff violates L.R. 56.1 and the court's admonishment in Portis v. City of Chicago, 510 F. Supp. 2d 461 (N.D. Ill. 2007), to separate facts among paragraphs when filing a statement of material facts. As the court noted in Portis, not all technically noncompliant filings fail to abide with the spirit of the rule, such as filings that group facts in a logical manner, as here. Id. at 463.

8

The court begins by agreeing with plaintiff that a reasonable jury could find that defendants did not have probable cause to arrest plaintiff. Defendants correctly note that probable cause is a complete defense to claims for false arrest and wrongful pretrial detention, and the threshold to establish probable cause is low. See Norris v. Serrato, 761 Fed. App'x 612, 615 (7th Cir. 2019). An officer has probable cause to seize (i.e., arrest or detain) an individual if the facts and circumstances within the officer's knowledge are sufficient to permit a reasonably prudent person to believe that the suspect had committed or is committing an offense. See Coleman v. City of Peoria, 935 F.3d 336, 350 (7th Cir. 2019). Probable cause is based on an objective, common-sense evaluation of the totality of the evidence at the time. See Hart v. Mannina, 798 F.3d 578, 587 (7th Cir. 2015). Moreover, certain determinations of probable cause are entitled to a presumption of validity, such as when a court has determined that there is probable cause, Lewis v. City of Chicago, 914 F.3d 472, 477 (7th Cir. 2019), or when a grand jury issues an indictment. See Coleman, 935 F.3d at 351.

Defendants argue that in this case, a Cook County judge found probable cause to detain plaintiff and a grand jury indicted plaintiff, resulting in a presumption of probable cause. Further, defendants argue that regardless of whether the court presumes probable cause, no reasonable jury could find that the officers lacked probable cause to arrest and detain plaintiff because Phillips reliably identified plaintiff in the photo array. Even a single identification from a credible eyewitness is enough to establish probable cause. See Phillips v. Allen, 668 F.3d 913, 915 (7th Cir. 2012). In the instant case, Detective Ryan testified that Phillips's identification formed the basis for probable cause that resulted in plaintiff's arrest and subsequent detention. The court agrees that plaintiff provides no evidence to suggest that defendants coerced or manipulated Phillips into identifying plaintiff in the photo array. See id. at 917.

Plaintiff counters that there is a genuine dispute whether defendants acted reasonably in relying upon Franklin's conversation with her cousin about the shooter, as well as her social media investigation. According to plaintiff, a reasonable jury could find that the detectives knew that Franklin's story was not credible and/or fabricated. The court agrees. Plaintiff also argues, and the court agrees, that a reasonable jury could find that Phillips's identification was unreliable because defendants allegedly knew that Franklin had shown Phillips a photograph of plaintiff and told him to identify plaintiff.[9]

If a jury found that the officers did know that Phillips unreliably identified plaintiff, the jury could also find it was unreasonable for defendants to rely upon his identification as the key foundation for probable cause to arrest plaintiff.[10] While Detective Ryan's testimony suggests that she did not know whether Franklin showed Phillips a picture of plaintiff before the array, or whether Franklin told him to identify plaintiff, Franklin's testimony and her text messages to Detective Ryan suggest the opposite. The court does not make credibility determinations or weigh conflicting evidence upon summary judgment, and a reasonable jury could find either way. See Johnson v. Advocate Health & Hosps. Corp., 893 F.3d 887, 893 (7th Cir. 2018).

It is true that a grand jury's indictment of plaintiff raises a presumption of probable cause, as does a judge's determination of probable cause before detention. The problem for defendants is that they arrested plaintiff before his indictment and before a judge found probable cause.

---

[9] Plaintiff also argues that inconsistencies between Phillips' description of the shooter (taller than himself at 5'8") and the shooter's appearance in the Ring doorbell video (arguably taller than Phillips) versus plaintiff's actual stature (at 5'4") further suggest that defendants' reliance on Phillips's identification was unreasonable. The court agrees with defendant that these inconsistencies alone are not enough to negate probable cause. See, e.g., Cairel v. Alderden, 821 F.3d 823, 835 (7th Cir. 2016).

[10] The court rejects plaintiff's argument that defendants disregarded or ignored exculpatory information when evaluating probable cause, including the "tight timeline" between the shooting and plaintiff's swipe history at EIU's campus over 170 miles away, which is corroborated by video surveillance footage. There is no evidence that defendants ignored this evidence rather than affording it less weight than plaintiff believes that it deserves. As defendants note, officers do not need to investigate a suspect's alibi before arresting him if there is otherwise probable cause for arrest. See Jackson v. City of Peoria, 825 F.3d 328, 330 (7th Cir. 2016).

Both the grand jury and the judge found probable cause only after defendants' investigation yielded additional evidence. For example, after plaintiff's arrest, the totality of the evidence necessarily shifted to include defendants' interview with plaintiff and plaintiff's swipe card history at EIU, in addition to the still pictures from the surveillance footage, which are arguably probative. Moreover, plaintiff raises a genuine dispute whether ASA Moss's understanding of the nature of Franklin's social media investigation was different than defendants' understanding of her investigation, as well as her role in defendants' decision to name plaintiff as the primary suspect. Importantly, the state's attorney's office, not defendants, presented the case to the judge and grand jury.

It is more difficult for plaintiff to rebut the presumption of probable cause at the time of his detention. See Lewis v. City of Chicago, 914 F.3d 472, 477 (7th Cir. 2019). Plaintiff provides no evidence to suggest that defendants caused untruthful evidence to be presented to the court. On the other hand, a reasonable jury could find that Detective Ryan made false statements before the grand jury when she might have knowingly or with a reckless disregard for the truth stated that plaintiff shot Phillips. See Beauchamp v. City of Noblesville, Ind., 320 F.3d 733, 742–43 (7th Cir. 2003) ("A 'reckless disregard for the truth' is demonstrated by showing that the officers entertained serious doubts as to the truth of their statements, had obvious reasons to doubt the accuracy of the information reported, or failed to inform the judicial officer of facts they knew would negate probable cause."). Such a finding would be sufficient for plaintiff to avoid summary judgment on Count II (pretrial detention) if he could show that Detective Ryan's false statements were necessary components of the grand jury's decision that there was probable cause. Id. at 743. Plaintiff has provided no such evidence.

Rather, this court concludes that no reasonable jury could find defendants to be liable for

11

plaintiff's pretrial detention because plaintiff provides no evidence that defendants were a proximate cause of his harm. See Hoffman v. Knoebel, 894 F.3d 836, 841 (7th Cir. 2018). In this case, the grand jury indicted plaintiff after the court determined that there was probable cause to detain him, so defendants cannot argue that plaintiff's indictment broke the chain of causation. See Colbert v. City of Chicago, 851 F.3d 649, 655 (7th Cir. 2017). That being said, the court agrees with defendants that no reasonable jury could find that defendants were a proximate cause of plaintiff's alleged harm because there is no evidence that their post-arrest actions influenced the court's decision to detain him. See id. Plaintiff has provided no evidence that defendants misled or pressured either ASA Moss to approve felony charges or the state to bring the case before the court.

Thus, the court concludes that although a reasonable jury could find that defendants lacked probable cause to arrest plaintiff (i.e., a reasonable jury could find in favor of plaintiff on Count I), no reasonable jury could find that defendants lacked probable cause to detain him (i.e., a reasonable jury could not find in favor of plaintiff on Count II). Still, the court grants summary judgment on Count I in favor of Officer Hernandez because there is no evidence that Officer Hernandez knowingly contributed to plaintiff's false arrest. To the contrary, there is only evidence that he relied on the investigative alert. The Seventh Circuit has determined that an officer may, in objective good faith, rely on another officer's information, "even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action," under the collective knowledge doctrine. United States v. Williams, 627 F.3d 247, 252 (7th Cir. 2010). As defendants argue, there is no evidence that Officer Hernandez unreasonably relied on the information provided by Detectives Ryan and Scherr. There is also no evidence that he falsely identified plaintiff in the photograph that

12

Detective Ryan circulated to the tactical team, or that he drafted false police reports with false testimony to establish probable cause to arrest plaintiff.

Defendants' last argument for summary judgment in their favor is that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotations omitted). The Seventh Circuit has determined that qualified immunity protects officers whose assessments of probable cause were "reasonable, even if mistaken." Tebbens v. Mushol, 692 F.3d 807, 820 (7th Cir. 2012). Defendants argue that Detectives Ryan and Scherr are entitled to qualified immunity because their assessments of probable cause, even if mistaken, were reasonable.[11] They argue that it is not contrary to clearly established law to rely on an investigative tip from a civilian, even if the tip is questionable.

To evaluate this argument at summary judgment, the court is guided by two almost-circular determinations: first, whether a reasonable jury could find that the detectives did not have probable cause to arrest plaintiff, which entails evaluating the totality of the evidence; and second, whether the detectives' mistaken assessment of probable cause to arrest plaintiff was reasonable. See Lewis v. City of Chicago, 914 F.3d 472, 477 (7th Cir. 2019). As discussed above, the court answers the first question in the affirmative: a reasonable jury could find that the detectives did not have probable cause to arrest plaintiff. The court, however, concludes that Detectives Ryan and Scherr are entitled to qualified immunity on Count I because, even if a jury

---

[11] They argue that Officer Hernandez in particular is entitled to qualified immunity because he reasonably relied on the other officers' investigation into plaintiff, and the Seventh Circuit has determined that an arresting officer is entitled to qualified immunity, even if the underlying probable cause assessment was incorrect, when the officer reasonably relies on information from other officers. See Tangwell v. Stuckey, 135 F.3d 510, 517 (7th Cir. 1998). The court does not need to decide whether Officer Hernandez is entitled to qualified immunity because it determines that, in any event, he is not a proximate cause of plaintiff's allegedly unconstitutional seizures.

were to determine that their assessment of probable cause was mistaken, the detectives' determination that they had probable cause to arrest plaintiff was reasonable. See Tebbens, 692 F.3d at 821 ("The qualified immunity defense provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). Their assessment was largely based on difficult credibility determinations, with contradictory evidence. Consequently, the court grants summary judgment for all defendants on Counts I and II.

In addition, the court concludes that defendants are entitled to summary judgment on Count III, or state-law indemnification against the City, because neither Detectives Ryan and Scherr nor Officer Hernandez can be found liable to plaintiff for his arrest and pretrial detention as a matter of law. Indemnification would allow plaintiff to hold the City liable for its employees' conduct, but in this case, no reasonable jury could find that Officer Hernandez was the proximate cause of plaintiff's allegedly unreasonable seizures. Moreover, no reasonable jury could find that defendants lacked probable cause to detain plaintiff before trial. Last, even if a reasonable jury found that Detectives Ryan and Scherr lacked probable cause to arrest plaintiff, they are entitled to qualified immunity.

## **CONCLUSION**

For the reasons set forth above, the court grants defendants' motion for summary judgment on all counts (Doc. 80).

**ENTER:**

*Robert W. Gettleman*
**Robert W. Gettleman**
**United States District Judge**

**DATE:** January 4, 2023

14